Thank you, Your Honors. I'd like to reserve four minutes for rebuttal, if that's alright. Just watch the clock. Thank you. My name is Eric Alan Isaacson. I am counsel of the record in this case for the appellants, Preston and Rita Smith and Patricia Sanford. The case is one that was up here about three years ago, relating to an arbitrability, arbitration appeal. It was remanded back to the district court, and we have a final order that dismisses the case and denies leave to plead a RICO cause of action. I'd like to start with the RICO point, which was denied on the basis that to plead a RICO claim would be futile because we couldn't comply with federal rule of civil procedure. I know it's point one in your brief, but it was not point one in your first complaint. What took so long? I'm just curious, not that it has any possible legal relevancy, but I'm just curious as to why it took so long for this to... It took a while for several reasons. One of the points that this court and bank made in Odom v. Microsoft was that judges have been uncomfortable with RICO and have repeatedly tried to narrow it. That required the Supreme Court to issue a series of opinions saying, no, RICO is to be construed liberally. And then this court had to go and bank in 2007 in Odom v. Microsoft to say, yes, that's right, it's got to be liberally construed. Now, Microsoft v. Odom, which was decided within a few months, the remand order in this case made it, I think, clear to us that we ought to think about a RICO claim. Plaintiffs' lawyers have a tendency to try to avoid pleading RICO claims unless they're very certain that they're well-grounded because some district judges are very annoyed by them. They don't like to have allegations of racketeering. So it's something we had to give a lot of thought to. Microsoft v. Odom, or Odom v. Microsoft, the Unbanked Ninth Circuit opinion, made it clear to us that we would have a valid claim on facts that are basically on all fours with our case. That explains my curiosity. The problem I'm having is that I didn't see any representation in your brief as to exactly what facts you would be able to plead in order to establish the who, what, when, where, why. Such as who made the call and what specific mailing we're talking about. Could you address that? Well, there's a proposed amended complaint. I think the facts are in a proposed amended complaint. We've got the who made the call, the consumers. Patricia Sanford made a call. And we know that either Rita or Preston Smith made a call. Well, but that's a problem. I mean, you can't specify which of the two actually had the conversation. So now we've got a problem we didn't have in Odom, which was we didn't know the name of the sales clerk. Not only do we not know the name of the telemarketer, but we don't know the name of the person who received the call. Well, what we have are a couple who are being billed for something that they know they did not order. There's a question about that. But you can't get to the billing until you can establish the misrepresentation. And you can't establish the misrepresentation without a witness who can authenticate the existence of the conversation. Well, Rule 9b requires particularization or particularity with respect to the circumstances constituting fraud. And what evidence do you have to particularize the circumstance of the sales call? The core of the fraud in this case is the unauthorized billing. We have a husband and wife. I understand the theory. I understand the articulation of the scheme and artifice to defraud. That's not my question. My question is, what particular evidence can you avere in order to establish or lay the foundation for the billing block of your scheme and artifice to defraud? Do you understand my question? I think I understand your question. And I think that in Odom v. Microsoft, this court said that we're not going to require people to plead things that they can't remember. And here we've got a couple. But in Odom, we had a person who said, I went to the Best Buy store to buy a computer. I purchased a computer. I gave them my credit card. I don't remember the name of the sales clerk, but here's the charge to my credit card. What's missing in this case is we don't have anybody who can say, I got a telephone call from a telemarketer. Instead, you want to jump to the charge that appeared on their bill. And the question is, is that enough to overcome the futility bar? Well, Your Honor, they placed the call. One of them placed these calls or both of them placed these calls to the telemarketer. We know that. We also know that Member Works is going to have in its records who it was that they signed up. So, you know, the second point that you have in Odom v. Microsoft after saying we're not going to require people to plead in this consumer case where they notice months or years after a transaction that they're being billed for something they never ordered, we're not going to require them something that we cannot expect them to remember. And the second point that the court made was that you've got to think about the purpose of Rule 9b. It's to give the defendants adequate notice so that they can frame an answer. They understand the nature of the claims here, Your Honor. Now been pending for how long? The case has been pending since 2002. So eight years. More than half a decade. What I heard you just say is I'm not going to be able to particularize the who, what, when, where of the call until I can conduct discovery of the telemarketer's files, and hopefully it will reveal the information that I am unable to allege in my complaint. I believe, Your Honor, it's been revealed in other cases, but I think that they're going to contend that it's subject to protective order and that therefore I'm not allowed to put it in my argument or put it in a pleading at this point. The fact is that the telemarketing company and member works know who they were building. They know who they enrolled in the program. And we're talking about a class action complaint being filed on behalf of a class of many, many hundreds of thousands of consumers who have been victims of this program, and they understand the nature of the claims and they understand the nature of the evidence that they're going to have to muster. And at this point we're talking about have we pleaded a claim, a plausible claim. Do they have enough to answer? Well, we've got a related problem, do we not? And that is that at this point the only named class representative is Ms. Sanford, who has settled her underlying related state court action. Well, they're seeking to represent a class as well, Your Honor. They came into the action to represent the class in the event that Sanford could not. Don't we have law that precludes a person in that situation to have standing to represent the class? Patricia Sanford? Yes. I think that that's an interesting question. I don't think that it matters on the fact of this case because the Smiths have standing. In a class action all you need is one plaintiff who has standing, the Smiths do. Yeah, but if you're relying on Sanford's call, who's no longer in the case, how does that get you anywhere? Your Honor, I'm also relying on the fact that the Smiths made calls and that the Smiths were billed for something that they didn't order and that a valid class action We're now back to the problem that I was questioning you about with regard to the inability to appear in the complaint. Which of the Smiths made the call? We have averred that one of the Smiths made the call and we were not going to violate Rule 11 by saying we knew for a certainty which one was. Let me follow up on that if I may. First of all, the bill that was sent to somebody was somebody's credit card, I imagine. Whose credit card was it? Mr. Smith's, Mrs. Smith's, or a joint credit card? I think they had a joint credit card, Your Honor. It was a joint credit card, so you know that jointly the Smiths received that bill. But you're being quite honest and forthright in your pleadings by saying that they can't remember which one specifically made the call, but one of us made the call and that's confirmed by the fact that their credit cards were billed. That's right, Your Honor. You could have simply said that Mr. Smith made it or Mrs. Smith made it and we're not here arguing about this issue, but you're being totally candid because under the circumstances you can't expect these folks to remember exactly who made that call and that's part of the intrinsic nature of the scheme, is it not? That's absolutely correct, Your Honor. Now they received a mailing of a membership kit that would have had an addressee that indicated which of them it was, but those get chopped. Let's talk about the mailing. Do they have, can they establish the date on which the United States mails were used in order to establish the 1341 violation? I don't think that Rule 9b requires us to plead the exact date of each of the mailings that were made. Well, there has to be proof that in furtherance of the scheme to, first you have to prove the existence of the scheme to defraud, then you have to prove that there was a mailing or a wire transfer in furtherance of the scheme to defraud that utilized the instrumentalities of commerce before you can establish a predicate act for the RICO claim. Isn't that right? We've specifically identified the dates of the telephone calls, so we have the predicate acts for wire fraud. Well, except that we don't know who answered the phone. So I'm moving on now to the mailing of the membership. Let's assume you don't convince me on the 1343 violation. Now let's go back to the 1341 violation. What proof do the Smiths have that they received on or about a particular date a mailing that came from the defendants, which was this membership? Well, the practice of member works was to send a membership kit. They don't have the membership kit, nor can they identify the date on which they received it. We have pleaded that the membership kits were designed to look like junk mail so they'd be thrown away. So the answer is no. The answer is they do not recall that, and this court in banking, Odom v. Microsoft, says Rule 9b does not require plaintiffs to plead in the context of a consumer class action where people are billed for something and don't notice until a year or 17 months or two years after the transaction. What I hear you telling me is the only thing that you've got right now is a charge that appeared on a joint credit card. We've got lots of charges, Your Honor. Well, I'm talking about the Smiths. That's the only thing that the Smiths can say with any, I mean, that even rises to the level of proof by preponderance. If you take a look at paragraph 15 of the complaint, you'll see that the Smiths were enrolled multiple times. You'll see that there are dates for the phone calls, and you'll see that there are dates for the billings that appeared on their credit cards. Now, their credit card bills probably came in the mail, but the credit card bills are not mailed by member works. Well, do you need mail fraud in order to survive here? No, I don't think so. Do you just rely on multiple wire transactions? I think we've got, we need three predicate acts. Is it plausible from the facts alleged in this case that there were three predicate acts of misleading telephone communications or three acts of billings or of mailings of the membership kits in connection with the scheme? You bet that's plausible. We're going back to the proof problem, though, with the fact that the Smiths can't remember the phone conversation. Your Honor, this is a complaint. I don't have to prove the claims in a complaint. This is a Rule 1286 motion. There's a little evidence here, and now I think I understand better why the district court was troubled with regard to the futility issue as to whether or not you could meet the higher pleading requirements under Rule 9, let alone what we're going to do with Iqbal and Twombly. Your Honor, this is a case that was litigated for more than five years going through arbitration in which the arbitrator concluded that the membership scripts or the telephone scripts were misleading, that they were a recipe for confusion, and that member works knew it. We've got a similar finding after trial from... Have you got anybody else besides the Smiths or the Sanfords that you're prepared to substitute in as class representatives who can supply these, fill these gaps? We would be happy to if you would let us, Your Honor. If that's what you want, absolutely. So you're down to less than two minutes. I reserve my rebuttal time, Your Honor. You may do so. Thank you so much. You're welcome. Thank you, Your Honor. May it please the Court. Daryl Heber on behalf of Appellee Member Works. I'd like to deal with three other rulings of the Court which... The context of this scheme for the fraud, which is designed to accomplish arguably exactly what happened here, that people would throw away these membership kits. There was nothing fraudulently that was misrepresented in those kits. We're not dealing with those cases where the membership kits or the information that was sent through the mails was relevant because it contained the fraudulent misrepresentations. We're not dealing with that here. We're dealing with a scheme that worked exactly in the way that brings us to court, it seems to me. These folks are billed later. They don't have a specific recollection of who made the call, except one of the two honestly made the call, and they threw away the membership kit. Why does it make a difference in the context of this alleged scheme whether Mr. Smith made the call or Mrs. Smith made the call? Fundamentally, because Odom, contrary to counsel's comments, Odom did reaffirm the requirement of identifying the participants to the actual communications that have the supposed misrepresentations. Did it depend upon the circumstances of a particular case ultimately in terms of how to assess the fairness of the dynamics of a particular scheme? It's crucial to be able to allege with particularity. Here, the information is in the knowledge, personal knowledge... I fail to understand. Because, Your Honor, they indicate that the alleged misrepresentation is in the script. In the reply brief, they concede that it's literally correct, but it's the way it was read and the emphasis on particular words that rendered it fraudulent. That makes all the more crucial who said what to whom or what they didn't say and what they emphasized. And yet they can't allege, they concede, they could not allege, neither Smith could say in their complaint, I had the phone call. That's why you think it's relevant, so they can say, I remember being told this specific information. And it was said this way, and that made it misleading to me, and that's why I did this transaction. That's your answer. Yes, Your Honor. That's your best answer about that. They may have claims, state law claims, where a lesser pleading requirement exists, but they can't allege with particularity. Why is it relevant whether they actually received the merchandise or threw it away? It was designed to be thrown away. That's their claim. It's junk mail. Toss it away. Again, they emphasize that it's the wire fraud where the fraud supposedly occurred, the phone call, and how the script was read. They say mail and they say mail also. And what they say in the reply brief, Your Honor, is that the mailing was merely in furtherance because either it deterred or it was essential to completing the fraud. They concede the fraud occurred during the phone call. It's already done. The mailing doesn't work. It's a self-refuting allegation. They say it detours somebody from knowing. Well, if they say it's made as junk mail so it's thrown away and never seen, if the goal is to have it never seen, they wouldn't send it at all. If anybody read it, however, they would be not deterred from determining the supposed fraud. They'd be fully even more aware that they're being treated as having signed up for a membership. You make these same arguments under state law because if there's alleged, viable claims under state law under the recent statutory changes, we get it back in any event, don't we? Not necessarily. As an example, they had some individuals go out and file state law claims. Some of those were removed. Some were not removed. Not every case meets CAFA. Not every one does. And it's not always asserted in every case. This day it may not. We don't know. But it wouldn't also, more importantly, there wouldn't be a federal claim there. There may be state law claims. There may be a claim in Iowa. There may be something under a statute that doesn't require the particularity that RICO does, that ODEM does. But it was crucial here where they cannot allege, and they concede, they cannot allege that I had this call where somebody read something in a particular way that made it misleading to me. They're unable to do that. And it makes it all the more important that unlike ODEM, where they identified the entity that had the direct communication, here they don't. But they don't allege that during the call that that entity wasn't identified or wasn't identified in the TV commercial they called. Is there any issue of fact here that this was exactly the script that was read to people who did call, that it's an automatic type of voice that comes in and reads the script? Absolutely, Your Honor. There are no allegations here as to what else was said during the call. There's often Q&A. Isn't this automatically programmed on some machine where people just give this information out for the script? No, Your Honor. These are individuals, absolutely, and they're different entities that do it. And there's discussion that takes place between the consumer and the person they're on the phone with. And there's a Q&A process that occurs. None of that is identified as any particularity because they concede they cannot do so. That's not the basis for a RICO case. And with Sanford, of course, you have a more fundamental problem. She settled all her claims and lacks a personal stake in the case. So her claims are moot, as the district court recognized, and her individual claims are moot. And they conceded that point to the court below and didn't raise it in their appeal brief. So that's waived. As to the other claims, Your Honors, I'll just touch on them briefly. But the court properly determined, again, that Sanford was no longer appropriately in the Clay's case, and her allegations fall off.  Not standing to nevertheless represent the class. No, Your Honor. The case law of Learbo and the other Ninth Circuit cases that we cited, at the pleading stage, when they fail to state a claim and there hasn't been class cert or denial, the proper remedy is dismissal, not substitution. And that's the problem they have here. They had no federal claim stated. Under the unordered merchandise statute, it's not merchandise. They conceded the definition below that the judge accepted, which is Black's Law Dictionary definition. Merchandise doesn't include intangibles or representations of something of value. Here, the contents of the mailing kit, the membership card and the rules, are not a piece of merchandise. They are representations of a membership, which is an intangible status. The membership card is not the membership. I guess you also believe that there's no scheme to defraud here, right? This is perfectly okay what happened, you know, good old American economics. Under the standards of Odom, they have not alleged with the particularity required a scheme of fraud as it relates to these individual plaintiffs. The problem is that these people can't say that this is what was told to me, right? They can't say that it was told to them, what they say is literally correct, but read in a way that led me to be misled, and therefore it's fraudulent. That's the case they set forth in their reply brief. And that, you need particularity to get to that point of, this word was nuanced, that one wasn't nuanced, and without telling you what else was said. Everybody involved in discovery should have a shot at showing that this scheme to defraud should not be sanctioned in the courts of law. Don't you think they deserve an opportunity to have some discovery on that issue? Rule 9 requires as a gate to discovery that you allege with particularity in the first instance. This type of fraud, right? This type of fraud. And more importantly, where there's leave is denied for further amendment. By the way, in their reply brief to the Court on leave to amend, they did not proffer any additional facts that they could allege to fix the problem. She had the broadest possible discretion under the Ninth Circuit law to deny further leave to amend. I think discovery, heck, they need discovery. Why can't they have an opportunity to do that? Because the Smiths aren't going to depose each other to determine what they don't remember. We already know what they don't remember. You can ask them whether or not this is standard type of speech that's made, whether it comes as a record, or whether it's an individualized thing, which you say. But you're not the client. You're not giving testimony. But even if the script is standard, it doesn't mean that it's read with the same nuance every time. That's what we relied upon to avoid this fraudulent scheme, right? It's not read with the same nuances, right? No, the point... This is all about nuance now, right? No, Your Honor. I'm just taking their own complaint and theory in the reply brief as well. And if that is their theory, that that's what renders this fraudulent, then they need particularized allegations to get there. And they simply concede they don't have it. On that basis, after the court properly determined there was no unordered merchandise claim as a matter of law, that their other federal claim, which they belatedly brought in, the Electronic Fund Transfer Act, they admit they have no individual claims there, because their credit card transactions aren't covered by it. So they're down to their last Hail Mary pass. It's all about RICO, I think. It was, six years into the case, Your Honor, that they come in and say, wait, we'd like to try a RICO claim. They'd be penalized because it took that long to bring this case. It at least requires that adherence to Rule 9, as the court warned them, she would strictly adhere to, in light of the suspicions she had, that this was just another attempt to open the court door again on a case that, for six years, they couldn't state a federal claim. And when it was put up for shut-up time, they conceded. Again, Sanford is not in the game anymore. And the two Smiths basically admit they can't make the allegations with particularity. That's what this whole case, the RICO case, turns on, right? That's what their effort to put it in the case in the sixth year comes down to, their failure to allege. Thank you, Your Honor. Mr. Isaacson, you have some reserve time. You don't have anybody to testify about the nuances and what exactly was said during these telephone calls or this call. How do you surmount that? You can take a look at the Iowa decision that was submitted with the Rule 28J letter and see exactly how that was surmounted in a trial in that case. I want to say that Member Works knows who they enrolled between Preston and Rita Smith. It's part of a database that they produced in the Ohio litigation, and I would be very pleased to tell you which of the two it was that they enrolled and that, therefore, it was the person who made the phone call and that I would be happy to elect, happy to plead and make the phone call. Will you contend that I am violating a protective order if I tell them? Counsel, that's not appropriate. I'm sorry, Your Honor. Well, I am concerned that if I tell you which of the two it was, they will contend that I violated a protective order. They know, and Odom v. Microsoft says that the purpose of Rule 9B is so that they understand the nature of the claims and can frame an answer, and they can frame an answer because they know who placed the call. You've got all the information. You can find that at a discovery, I guess, right? Absolutely, Your Honor. The fact is that we have pleaded facts that make it plausible that they have basically what amounts to a scheme to defraud by billing consumers for something they did not intend to order. The fact that 97.5% don't use the service in California indicates that it's misleading, and that's actual deceit according to this Court's opinion in the cyberspace.com case, Your Honor, which was relied on and followed by the Iowa Superior Court in the decision we submitted pursuant to Rule 28A. Thank you very much. Thank you very much, Mr. Counsel. The case just argued will be submitted for decision, and we will hear argument in the last case of the day, Trustees v. D.C. Associates.
judges: Block, O'scannlain, Tallman